**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
SONAL N. MEHTA (SBN 222086)
JESSICA LEWIS (SBN 302467)
Sonal.Mehta@wilmerhale.com
Jessica.Lewis@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

ARI HOLTZBLATT (SBN 354631)
ALLISON SCHULTZ (*pro hac vice*)
NATHANIEL W. REISINGER (*pro hac vice*)
Ari.Holtzblatt@wilmerhale.com
Allison.Schultz@wilmerhale.com
Nathaniel.Reisinger@wilmerhale.com
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6443

*Attorneys for Defendant*
*Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA,
## SAN FRANCISCO DIVISION

| | |
|---|---|
| MAURIE DAIGNEAU, et al.,<br><br>              Plaintiffs,<br><br>     v.<br><br>META PLATFORMS, INC.,<br><br>              Defendant. | Case No. 3:25-cv-10180-WHO<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AMENDED COMPLAINT FOR LACK OF JURISDICTION UNDER FED R. CIV. P. 12(b)(1)**<br><br>Judge: Hon. William H. Orrick<br>Courtroom 2, 17th Floor<br>Date: July 8, 2026<br>Time: 2:00pm |

Plaintiffs' opposition confirms that if Section 230 does not bar their claims, the claims must be dismissed under SLUSA. Plaintiffs do not dispute that their claims satisfy four of SLUSA's five statutory requirements. They contest only whether the alleged misrepresentations were made "in connection with" their purchases of OST shares. On that requirement, Plaintiffs misstate the law and contradict the allegations and filings in this case as well as in parallel federal securities litigation. Because Plaintiffs' own theory is that Meta made misrepresentations "in connection with" Plaintiffs' purchase of covered securities, SLUSA bars their claims.

## I.      PLAINTIFFS' OPPOSITION CONFIRMS THAT SLUSA BARS THEIR CLAIMS

Plaintiffs do not contest, and therefore concede, four of SLUSA's five statutory requirements. *See Namisnak v. Uber Techs., Inc.*, 444 F. Supp. 3d 1136, 1146 (N.D. Cal. 2020) (where plaintiffs "fail[] to respond to" an argument, they "concede[] it through silence"). Specifically, Plaintiffs do not dispute that SLUSA's first, second, and fifth requirements (i.e., "covered class action," state law claims, and "covered security") are satisfied. Dkt. 34 at 2-3. Nor do they dispute the third requirement (misrepresentation). In an effort to avoid dismissal under Section 230 by insisting (per *Bouck*) that Meta itself created the fraudulent ad content, Plaintiffs necessarily concede that Meta's purported "'deceptive statements or conduct form the gravamen or essence of [Plaintiffs'] claim.'" *Id.* at 3 (quoting *Lim v. Charles Schwab & Co., Inc.*, 2015 WL 7996475, at *5 n.4 (N.D. Cal. Dec. 7, 2015)).

Plaintiffs thus contest only the fourth element ("in connection with"). That reduces their argument to the following: Although Meta purportedly created fraudulent ads that caused Plaintiffs to be injured by purchasing OST shares, those alleged misrepresentations somehow were not made "in connection with" the OST purchases. That contention is wrong on the law and cannot be squared with Plaintiffs' own allegations and prior filings. Plaintiffs' claims should be dismissed.

### A.      Plaintiffs Fail To Rebut That Alleged Misrepresentations In The Challenged Ads Were Made "In Connection With" Plaintiffs' Purchase Of Securities

The fourth SLUSA element is satisfied because the alleged misrepresentations were made "in connection with" the purchase of a covered security. Dkt. 34 at 4-5. Plaintiffs' opposition to the contrary misconstrues the law and the alleged facts.

*First*, Plaintiffs argue the "in connection with" element is not satisfied because they "do not allege that Meta's fraudulent advertisements even mentioned OST securities, much less contained false or misleading information about OST specifically." Dkt. 37 at 6; *see also id.* (arguing SLUSA requires "defendants' misrepresentations … to caus[e] [plaintiffs] to purchase a[] particular security"). This misstates the law. There is no requirement that the misrepresentation itself mention the specific security. To the contrary, the Ninth Circuit rejected this premise in *Fleming v. Charles Schwab Corporation.*, where the alleged misrepresentation—that the defendant "would deliver best execution of [Plaintiffs'] trades"—was untethered to the sale of any particular security. 878 F.3d 1146, 1154 (9th Cir. 2017). As the Ninth Circuit explained, it did not matter that "the promise of best execution d[id] not induce clients to trade a *particular* security." *Id.* at 1156 (emphasis added). Instead, "SLUSA requires only that 'the misrepresentation makes a significant difference to someone's decision to purchase or to sell a covered security.'" *Id.* (quoting *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 387-388 (2014)) (emphasis added).

This aligns with *Scala v. Citicorp Inc.*, 2011 WL 900297 (N.D. Cal. Mar. 15, 2011), and refutes Plaintiffs' claim that *Scala* is no longer good law. Dkt. 37 at 8. Plaintiffs wrongly suggest (*id.*) *Scala* has been superseded because it reasoned that SLUSA should be construed "very broadly," based on *Merrill Lynch, Pierce, Fenner & Smith v. Dabit*, 547 U.S. 71 (2006). *Id.* But *Troice*—the case on which Plaintiffs rely—expressly held that it was not modifying *Dabit* and reaffirmed that "the 'in connection with' requirement … *must be read broadly*." 571 U.S. at 387 (emphasis added); *accord Banks v. N. Tr. Corp.*, 929 F.3d 1046, 1054 (9th Cir. 2019). Plaintiffs otherwise attempt to distinguish *Scala* based on superficial factual differences; they argue Meta is not a financial institution and did not approve monetary transfers or maintain brokerage accounts. Dkt. 37 at 8. But that focus on Meta's business, rather than the connection between its alleged conduct and Plaintiffs' purchase of covered securities, misses the point. What mattered in *Scala*—and what matters here—is the nexus between the defendant's alleged conduct and the securities transactions.

Plaintiffs' cases do not support a contrary conclusion. *See* Dkt. 37 at 5-7. In each case, SLUSA did not apply because the alleged misconduct caused harm unrelated to any decision to

purchase or sell a covered security. *In re Robinhood Outage Litig.*, for example, involved a "complaint … based entirely on the allegation that Robinhood promised users robust and best-in-class technology, and failed to deliver it" because of a "systems crash." 495 F. Supp. 3d 831, 834-835 (N.D. Cal. 2020). In *Anderson v. Edward D. Jones & Co., L.P.*, the plaintiff was allegedly duped into selecting a high-fee brokerage account but nowhere alleged he would have "purchased or sold different covered securities" had he kept a lower-fee account. 990 F.3d 692, 702-703 (9th Cir. 2021). And in *Abada v. Charles Schwab & Co.*, the "defendant's conduct had nothing to do with the trading of any particular security," as the alleged loss resulted from Schwab's "technical inability" to process an order request. 127 F. Supp. 2d 1101, 1103 (S.D. Cal. 2000). In each of these cases, the claimed losses stemmed from something other than the plaintiffs' decision to purchase or sell a covered security.

*Second*, beyond misstating the law, Plaintiffs recast the alleged facts to try to avoid SLUSA's bar, articulating a theory of their case that is unrecognizable. Until now, Plaintiffs have repeatedly claimed they were injured solely because they purchased shares of OST whose value collapsed. And they have claimed Meta was responsible for that injury because it allegedly contributed to ads that caused Plaintiffs to make those purchases. Plaintiffs' new assertion that they do not allege Meta "induce[d] any Plaintiff to purchase [OST] shares," Dkt. 37 at 10, contradicts the Amended Complaint and their previous filings.

The Amended Complaint repeatedly describes the challenged ads, WhatsApp communications, and manipulation of the OST share price as part of a single "OST Scheme." Am. Compl. ¶¶ 1, 17-22, 94, 96, 133, 145, 156, 169. It alleges that this "OST Scheme" "*used advertisements created by Meta* and distributed through the Company's Facebook and Instagram and social media platforms, and its WhatsApp messaging service, to extract millions of dollars from unsuspecting victims," *id.* ¶ 1 (emphasis added), and was "designed to manipulate the price of OST shares," *id.* ¶ 145; *see also id.* ¶ 17 ("Meta's advertising tools were the *primary* means through which the scheme was implemented, which led to Plaintiffs and other victims interacting with and being victimized by the Scammers." (emphasis added)); *id.* ¶ 18 ("The OST scammers could not have accomplished their scheme without … Meta's advertising tools[.]"). And it uses

the very language of this SLUSA element—"in connection with"—to describe the challenged ads as part of this scheme to manipulate the price of a security. *Id.* ¶¶ 19, 156, 185-186. Indeed, Plaintiffs call the challenged ads "an *essential* element used to lure Plaintiffs … into purchasing large amounts of OST shares." *Id.* ¶ 146 (emphasis added).

Plaintiffs' Opposition to Meta's Rule 12(b)(6) motion likewise reiterated the connection between the challenged ads and their purchase of OST shares. That brief calls the challenged ads "the OST ads." Dkt. 33 at 6, 16. It describes Meta as playing a "fundamental role in executing the fraud" because it allegedly "developed hundreds of fraudulent advertisements for the OST scam." *Id.* at 16. And it claims that "the scam *ads … resulted in [Plaintiffs'] financial losses*" from buying the inflated OST stock. *Id.* at 25 (emphasis added). Having pleaded, and repeatedly reaffirmed, that Meta's conduct was part of a single, unified scheme that caused Plaintiffs to purchase OST shares and suffer trading losses, Plaintiffs cannot now try to draw a sharp line between those ads and their eventual purchase of the shares to avoid SLUSA.

And if Plaintiffs' allegations and representations in this case left any doubt, Plaintiffs' new position also contradicts their own litigation conduct in a closely related matter—one that the Opposition ignores. That is, a securities fraud class action brought in the Southern District of New York in which three of the same Plaintiffs (Daigneau, Parmar, and Gordon), represented by the same counsel, have alleged that the same OST scammers engaged in a "fraudulent promotional campaign" that used paid promotions and impersonation *on Facebook and Instagram*, together with coordinated communications through *WhatsApp groups*, to inflate OST's stock price and induce investors to purchase shares. Compl., *Gordon v. Ostin Tech. Grp. Co., Ltd.*, No. 1:26-cv-01288 (S.D.N.Y. Feb. 16, 2026), Dkt. 1 ¶¶ 8, 30-34. Plaintiffs cannot plausibly allege in another federal court that Meta's platforms were integral to the promotional campaign that manipulated OST's stock price and caused their trading losses, while simultaneously insisting to this Court that Meta's alleged misrepresentations were not made "in connection with" their purchases of OST shares. Those positions are irreconcilable. Indeed, SLUSA exists to prevent plaintiffs from pursuing this sort of parallel, duplicative litigation—seeking to recover the same trading losses under federal securities laws on the one hand, while recasting those same losses as state-law claims

against a different defendant on the other. *See infra* pp.5-6.

**B.      Barring Plaintiffs' State Law Claims Is Consistent With SLUSA's Purposes**

Plaintiffs point to the supposed merits of their case, the extent of the alleged harm, and other policy arguments as a reason not to apply SLUSA's statutorily required bar. Dkt. 37 at 8-9. They do not—and cannot—cite any authority to support their suggestion that the Court could decline to apply SLUSA based on these policy considerations, rather than applying its statutory requirements. SLUSA's jurisdictional bar applies where those statutory requirements are satisfied, none of which considers the merits of the claims at issue or the extent of the alleged harm.

To the extent policy is relevant, however, Plaintiffs' own litigation strategy demonstrates why SLUSA exists. SLUSA was enacted to ensure Congress's preference for "national standards for securities class action lawsuits involving nationally traded securities." *Dabit*, 547 U.S. at 86-87 (citing SLUSA § 2(5), 112 Stat. 3227). It sought to prevent "members of the plaintiffs' bar" from "bringing class actions under state law" "[r]ather than face the obstacles set in their path by" the PSLRA. *Id.* at 82. Those obstacles include "requir[ing] plaintiffs to meet heightened pleadings standards," "permit[ting] defendants to obtain automatic stays of discovery," "limit[ing] recoverable damages and attorney's fees," and "creat[ing] a new 'safe harbor' for forward-looking statements." *Troice*, 571 U.S. at 382-383. SLUSA is intended to be construed broadly so that plaintiffs cannot "circumvent Congress's purpose 'through artful pleading that removes the covered words but leaves in the covered concepts.'" *Hampton v. Pac. Inv. Mgmt. Co. LLC*, 705 F. App'x 588, 559-560 (9th Cir. 2017). Of particular relevance in this case, SLUSA was aimed at preventing "parallel class actions … with different standards governing claims asserted on identical facts." *Dabit*, 547 U.S. at 86-87.

Here, Plaintiffs are actively pursuing a federal securities class action governed by the PSLRA to recover for the alleged OST trading losses, while recasting those same losses in this case as state-law claims free from the PSLRA's strictures. *Compare* Am. Compl. ¶ 1 ("This case arises from Meta's role in … a stock manipulation scheme that used advertisements … distributed through the Company's Facebook and Instagram social media platforms, and its WhatsApp messaging service[.]") *with Gordon*, No. 1:26-cv-01288, Dkt. 1 ¶¶ 8, 33 ("*These securities*

*offerings were synchronized with a fraudulent campaign* to artificially inflate the price and trading volume of the OST stock through social media and messaging service applications," including *"Instagram or Facebook advertisements"* and "coordinated *WhatsApp groups* … to lure unsuspecting retail investors.") (emphasis added). As a district court in this circuit observed in a similar case involving a parallel federal securities action, "allowing Plaintiffs to proceed with their California state court action would encourage duplicative litigation and, consequently, undermine 'the congressional preference for national standards for securities class action lawsuits involving nationally traded securities.'" *In re Edward Jones Holders Litig.*, 453 F. Supp. 2d 1210, 1216-1217 (C.D. Cal. 2006) (quoting *Dabit*, 547 U.S. at 87). This case—where the same Plaintiffs seek recovery for the same trading losses in competing federal actions—falls squarely within SLUSA.

## II. PLAINTIFFS FAIL TO RECONCILE THE CONFLICT BETWEEN THEIR ATTEMPTED CIRCUMVENTION OF SLUSA AND THEIR CAUSATION THEORY

Regarding causation, Plaintiffs "cannot have it both ways." *See Fleming*, 878 F.3d at 1156 (rejecting "claim that [defendant's] failure to [fulfill fraudulent promise] impacted [plaintiffs'] securities trades while simultaneously claiming that the breach of duty is not 'in connection with' those trades"). Either Meta's alleged conduct caused Plaintiffs to purchase OST shares and suffer trading losses—in which case SLUSA's "in connection with" requirement is satisfied—or Meta's conduct was too attenuated from the purchases to support causation at all. Plaintiffs' attempt to recast Meta's role as merely facilitating an initial connection, with the actual "grooming" and inducement allegedly occurring later through independent criminal actors, would sever the causal chain on Plaintiffs' own theory and defeat their claims on the merits. *See* Dkt. 37 at 6.

Plaintiffs' own authority confirms this point. The "in connection with" requirement turns on whether there is "some causal connection between the fraud and the securities transaction in question." *Ambassador Hotel Co., Ltd. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1026 (9th Cir. 1999). Plaintiffs either allege that connection, which triggers SLUSA, or they do not, in which case they fail to plausibly allege that Meta's conduct caused their trading losses. Plaintiffs' retreat from their original causation theory cannot both evade SLUSA and preserve their claims. SLUSA forecloses

the former, and basic principles of causation foreclose the latter.[1]

## CONCLUSION

For the foregoing reasons, to the extent the Court does not conclude the Amended Complaint is barred by Section 230, it should be dismissed for lack of jurisdiction.

---

[1] Plaintiffs' claim that an argument on causation is procedurally improper, Dkt. 37 at 10, ignores the interplay of causation with their defense against SLUSA's bar, asserted here for the first time. In any event, rather than ignoring arguments that purportedly could have been raised in an earlier 12(b)(6) motion, the Court has discretion to decline to apply Rule 12(g)(2) because "relegating defendants to the three procedural avenues specified in Rule 12(h)(2)"—including a motion for judgment on the pleadings under Rule 12(c), which remains available to Meta here—"can produce unnecessary and costly delays." *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017). Meta respectfully submits that such delay is not warranted here.

Dated: May 12, 2026                    Respectfully submitted,

                                       By:*/s/ Sonal N. Mehta*
                                       **WILMER CUTLER PICKERING**
                                         **HALE AND DORR LLP**
                                       SONAL N. MEHTA (SBN 222086)
                                       Sonal.Mehta@wilmerhale.com
                                       JESSICA LEWIS (SBN 302467)
                                       Jessica.Lewis@wilmerhale.com
                                       2600 El Camino Real, Suite 400
                                       Palo Alto, CA 94306
                                       Telephone: (650) 858-6000

                                       ARI HOLTZBLATT (SBN 354631)
                                       Ari.Holtzblatt@wilmerhale.com
                                       ALLISON SCHULTZ (*pro hac vice*)
                                       Allison.Schultz@wilmerhale.com
                                       NATHANIEL W. REISINGER (*pro hac vice*)
                                       Nathaniel.Reisinger@wilmerhale.com
                                       2100 Pennsylvania Avenue NW
                                       Washington, DC 20037
                                       Telephone: (202) 663-6443

                                       *Attorneys for Defendant Meta Platforms, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of May, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System.

*/s/ Sonal N. Mehta*

Sonal N. Mehta